GREGORY M. GUTH, SBN 208755
Law Office of Gregory M. Guth
474 Century Park Drive, Suite 400
Yuba City, CA 95991
Telephone: (530) 822-9467
Facsimile: (530) 331-0154

Attorney for Plaintiff Justin Grooms

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN GROOMS,<br>Plaintiff,<br>vs.<br>YUBA COUNTY SHERIFF DEPARTMENT; WENDELL ANDERSON; NOLAN PIANTA; BRYON BUGARIN; GARRY BURDICK; ARTHUR WILLIAMS; JESSIE SPIERS; SHAUN HAMMOND; DEPUTY E. JONES; DEPUTY PAREDES, and DOES 1-50, inclusive<br>Defendants. | Case No.: 2:26-cv-00794-JAM-SCR<br>**FIRST AMENDED COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff JUSTIN GROOMS ("Plaintiff") complains and alleges by way of this First Amended Complaint as follows:

## I. INTRODUCTION

On August 8, 2023, Plaintiff suffered severe constitutional, physical, and emotional injuries during a traffic stop and arrest conducted by deputies of the Yuba County Sheriff Department ("YUBA SD"). During the stop, Defendants knowingly exploited Plaintiff's obvious and disclosed left arm / wrist / hand fracture, intentionally applied force directly to the injury, slammed Plaintiff to the ground, and unnecessarily deployed canine unit "Warden" to attack him while Plaintiff was already surrounded by several deputies, attempting to comply, and not presenting an immediate threat. Defendants allowed canine "Warden" to bite and gnaw on Plaintiff for approximately thirty seconds while Plaintiff screamed in pain and lay vulnerable on the ground. Defendants thereafter

delayed and interfered with necessary medical treatment for Plaintiff's serious orthopedic injuries while Plaintiff remained in custody both at the scene and for months while incarcerated at Yuba County Jail. The acts complained of herein were unreasonable, malicious, oppressive, punitive, sadistic, and undertaken with deliberate indifference to Plaintiff's constitutional rights and bodily integrity. The conduct constituted excessive force, unlawful seizure, battery, coercion, cruel treatment, and deliberate indifference to serious medical needs.

## II. PARTIES

1. During all times mentioned in this Complaint, Plaintiff was an individual residing in Yuba County, CA.

2. Defendant YUBA SD is a public entity established by and under the laws and Constitution of the State of California and responsible for the customs, policies, practices, supervision, training, discipline, and conduct of its deputies and employees, including individual Defendants in this action.

3. Defendant WENDELL ANDERSON ("ANDERSON") is/was, at all times mentioned herein, an individual and the Sheriff and final policymaker of YUBA SD concerning canine deployment, use of force, supervision, discipline, training, and arrest procedures, inter alia.

4. Defendants NOLAN PIANTA ("PIANTA"), BRYON BUGARIN ("BUGARIN"), GARRY BURDICK ("BURDICK"), JESSIE SPIERS ("SPIERS"), ARTHUR WILLIAMS ("WILLIAMS"), SHAUN HAMMOND ("HAMMOND"), DEPUTY E. JONES ("JONES"), and DEPUTY PAREDES ("PAREDES") at all relevant times are/were deputies employed by YUBA SD and acting under color of state law and within the course and scope of employment. The full and true names of Defendants E. JONES and PAREDES are currently unknown, however, Plaintiff shall amend pursuant to California Code of Civil Procedure §§ 473, 474 et seq upon discovery of same.

5. The true names and identities of Defendants, DOES 1 through 30, are presently unknown to Plaintiff. Plaintiff is informed and believes and thereon alleges that each of the Defendants, DOES 1 through 30, were employed by YUBA SD at the time of the alleged conduct complained of herein. Plaintiff alleges that Defendants, DOES 1 through 30, engaged in the conduct alleged herein, acted negligently, or encouraged or directed or enabled or ordered other Defendants

to engage in the conduct alleged herein. Plaintiff will seek to amend this Complaint as soon as the true names and identities of Defendants, DOES 1 through 30, have been ascertained.

6. The true names and identities of Defendants, DOES 20 through 50, are presently unknown to Plaintiff. Plaintiff is informed and believes and thereon alleges that each of Defendants, DOES 20 through 50, were employed by YUBA SD at the time of the alleged conduct complained of herein. Plaintiff alleges that each of Defendants, DOES 20 through 50, were responsible for the training, supervision or conduct of the other defendants, and that each were responsible for and caused the acts and injuries alleged herein. Plaintiff will seek to amend this Complaint as soon as the true names and identities of Defendants, DOES 20 through 50, have been ascertained.

7. Defendants, and each of them, to the extent they engaged in any acts or omissions alleged herein, and unless otherwise indicated by this First Amended Complaint, engaged in such acts and/or omissions under color of state law.

8. Plaintiff is informed and believes, and thereon alleges, that at all times mentioned in this First Amended Complaint, Defendants, and each of them, were the agents, employees, servants, joint venturers, partners and/or co-conspirators of the other Defendants named in this First Amended Complaint and at all times, each of the Defendants were acting within the course and scope of said relationship with Defendants.

## III. GOVERNMENT TORT CLAIM

9. Plaintiff filed a timely government tort claim on or about February 7, 2024 with the appropriate government entity, regarding the unlawful incident and related injuries, as prerequisite to pursuing the claims alleged in this action. Plaintiff's government tort claim was thereafter rejected by the government entity on or about February 23, 2024, and Plaintiff filed a timely action in pursuit of his claims on August 23, 2024 in Yuba County Superior Court.

## IV. RELEVANT FACTS

10. On August 8, 2023, at approximately 9:30 p.m., Plaintiff was driving a white 2001 Toyota Corolla in or around Marysville, CA.

11. Defendant PIANTA was on duty in a YUBA SD K9 patrol vehicle, and observed the Toyota Corolla travelling westbound on Feather River Blvd.

12. PIANTA suspected the vehicle was stolen and followed it in his patrol car. PIANTA activated his patrol vehicle's lights, and Plaintiff immediately complied by pulling the Toyota Corolla into the driveway at 972 Kay St., Marysville, CA.

13. PIANTA and SPIERS were reportedly first to the scene, and they waited for other Sherriff personnel to arrive before ordering Plaintiff out of the vehicle. Shortly after the stop, mumerous Sheriff deputies, Sargeant(s) and patrol cars arrived at the scene, including named Defendants, canine Warden, and others who are named as DOE Defendants. There were no less than 6 Sheriff patrol vehicles, and no less than 10 Sheriff Deputies and Sergeants at the scene.

14. From the beginning of the stop, Plaintiff communicated to Defendants several times that he had a broken left arm/wrist/hand, and even pointed to the left arm/wrist/hand to identify where he was injured. He also had a serious preexisting injury to his left clavicle making it difficult to raise his left arm. Defendants clearly heard Plaintiff's statements, saw him point to and identify which arm/wrist/hand was injured, and witnessed as Plaintiff had difficulty raising his left arm, keeping it raised, and performing other actions such as lifting his shirt to show his waistline.

15. Defendants were often yelling over each other. mixed with barking from canine unit Warden, as Plaintiff attempted to follow orders while sincerely pleading for their understanding about his broken left arm/wrist/hand which rendered him disabled. Defendant SPIERS gave Plaintiff confusing instructions on how Plaintiff was to lift his shirt (from the waist vs. from the neck); still, Plaintiff was intent on complying while noticeably in pain.

16. Plaintiff walked backwards as instructed with arms up on his head, and as he neared Defendant HAMMOND and SPIERS he made one final request that they take into account that his left arm/wrist/hand was fractured by stating "hey look my hand's broke, my hands broke" and then he said "look at my wrist" showing Defendants the left arm/wrist/hand and pointing to it. Defendant HAMMOND replied "I got you" acknowledging Plaintiff's statement and his knowledge that Plaintiff was injured with a fractured left arm/wrist/hand.

17. Defendant HAMMOND then sarcastically assured Plaintiff "I'll be gentle" and proceeded to go directly to Plaintiff's fractured arm/wrist/hand intentionally gripping and manipulating Plaintiff's injury in a forceful manner designed to inflict pain and provoke and

involuntary reaction. Predictably, Plaintiff cried out and reflexively responded to the severe pain inflicted by HAMMOND's targeted handle onto Plaintiff's broken bones. Plaintiff's body winced and jerked, and Defendant HAMMOND then slammed Plaintiff to the ground to forcefully cause him to submit even though Plaintiff had been making his best efforts to comply during the stop. HAMMOND falsely reported that Plaintiff swung his right elbow at HAMMOND; however, video evidence clearly shows Plaintiff's right elbow was tucked to Plaintiff's side and not extended as he turned in pain and cried out asking why HAMMOND had just grabbed his broken wrist despite being warned it was broken.

18. With full knowledge that he was targeting Plaintiff's injury, HAMMOND acted maliciously and oppressively toward Plaintiff with an intent to unreasonably cause Plaintiff severe pain during his detention, and which was at minimum conduct that was taken recklessly with deliberate indifference to Plaintiff's injury and disability. With his clear knowledge of the injury, the targeted grip was calculated to force an involuntary pain response by Plaintiff so that HAMMOND could erroneously justify his actions to body slam the otherwise compliant Plaintiff. This was a clear violation of County policies against excessive force, as well as Plaintiff's constitutional rights. Defendants SPIERS, E. JONES, and PIANTA knew that Plaintiff was complying, and that Plaintiff was injured; and they knew that HAMMOND's actions were intentional and malicious and were in violation of County policies against excessive force and Plaintiff's constitutional rights; however, they failed to intervene and prevent HAMMOND's despicable and unlawful actions. Plaintiff is informed and believes that Defendants BUGARIN, BURDICK, WILLIAMS, PAREDES and other DOE Defendants were present and participated in the detention; observed Plaintiff's obvious injury and compliance,;and failed to intervene while unconstitutional force was inflicted on Plaintiff by Defendant HAMMOND.

19. Defendant PIANTA participated in the detention with his canine unit "Warden" in hand. PIANTA watched and heard everything as it unfolded and was well aware of Plaintiff's concerns about his broken left arm/wrist/hand and observed as Plaintiff was doing his best to comply with orders under the chaotic circumstances and with obvious physical limitations due to his injuries. Still, as Plaintiff complied by walking backward toward Defendants HAMMOND, SPIERS, E.

JONES, et al., PIANTI moved himself and canine unit Warden directly behind HAMMOND and SPIERS, in position for Warden to attack Plaintiff.

20. PIANTA witnessed as HAMMOND intentionally grabbed directly at Plaintiff's obvious injury to cause him pain and an involuntary reaction. PIANTA then saw HAMMOND unnecessarily and unreasonably slam Plaintiff to the ground after Plaintiff's understandable and obvious painful response. To add insult to injury, PIANTA did not verbally command canine "Warden" to attack Plaintiff. Instead, without warning to Plaintiff, and after Defendant HAMMOND aggressively threw Plaintiff to the ground into a vulnerable position, Defendant PIANTA manually advanced and guided canine "Warden" by leash directly onto Plaintiff's body. Thus, without proper command nor audible canine announcement, and without necessity nor justification, Defendant PIANTA immediately gave canine unit "Warden" free reign on Plaintiff's body. PIANTA knew that Plaintiff was complying; he knew that Plaintiff's reaction was intentionally caused by HAMMOND; he knew that HAMMOND's actions were in clear violation of the County's policies against excessive force as well as a violation of Plaintiff's constitutional rights; yet PIANTA still allowed Warden to immediately pounce on Plaintiff and aggressively bite him.

21. Warden was manually engaged against Plaintiff after Plaintiff was already on the ground, surrounded by multiple deputies, visibly injured, and not presenting an imminent threat of violence or meaningful escape risk. Plaintiff was not concealed, armed, or actively assaultive. PIANTA permitted canine "Warden" to continue mauling Plaintiff for approximately thirty seconds before verbally commanding "oust" for the canine to release Plaintiff. Knowing Plaintiff had a broken left arm/wrist/hand, PIANTA unreasonably delayed stopping the attack until Plaintiff's hands were painfully handcuffed behind his back. Defendants HAMMOND, E. JONES and SPIERS unreasonably disregarded Plaintiff's pleas and obvious pain, and aggressively manipulated and forced his injured extremity behind his back to be handcuffed. Defendants then forced Plaintiff to stand up on his injured left leg, and further manipulated the cuffs on his fractured arm/wrist/hand while he was screaming in pain.

22. Fire personnel reported that Plaintiff required stitches, however, Defendants refused and would only allow bandages on the gaping dog bite wounds (Plaintiff is informed and believes an

unidentified Sergeant at the scene specifically told medical personal not to stitch Plaintiff). Deputies stood around and joked about Plaintiff's serious injuries, saying *"he might* have an injury to his left hand" and Defendant WILLIAMS quipped that it was "the worst cases of incarceritis I have seen in a long time" (meaning GROOMS was allegedly faking injuries or otherwise malingering / exaggerating in the face of being arrested). Defendant Williams also specifically refused to provide Plaintiff with water despite Plaintiff's desperate plea for something to drink.

23. At the scene, an unidentified Sergeant requested that PIANTA describe the canine was deployed. PIANTA admits he put Warden on Plaintiff manually. There was no discussion about what actions prompted PIANTA's decision, whether PIANTA made a verbal command (and/or warning) prior to the deployment- the Sergeant merely ratified the conduct by saying "perfect." PIANTA thereafter turns off his bodycam as soon as he starts to explain his actions to the Sargeant in order to conceal the discussion/evidence. E. JONES admitted to the same Sargeant and other deputies at the scene that she had perceived Plaintiff as attempting to comply with their orders.

24. Plaintiff was transported in a patrol vehicle instead of an ambulance despite obvious traumatic injuries and substantial blood loss from the canine attack. Plaintiff required emergency medical treatment and surgery. At the hospital, Plaintiff's injuries were attended to on an emergency basis. Despite surgery, Plaintiff's fractured arm/wrist/hand remained seriously displaced requiring follow up surgery. Nevertheless, Defendants delayed summoning proper medical attention while Plaintiff was in custody prior to trial. For example, Plaintiff did not receive his required follow up surgery for approximately 9 months while in custody.

25. After the incident, Defendants reported a list of pretextual factors (baggy clothes, tattoos, etc.) in an attempt to justify their use of force and unleashing of the canine unit. However, the body camera video objectively shows Plaintiff attempting to comply and Plaintiff's plea to take care with respect to his injury. Defendants could clearly see Plaintiff's actions were consistent with his reported injury / disability. HAMMOND acknowledged the injury / disability and then unsympathetically promised to be "gentle" as he intentionally targeted Plaintiff's fracture with a forceful grip. HAMMOND knew that Plaintiff would react in pain, and thus knew he could use the anticipated painful response as a pretext to body slam Plaintiff. PIANTA knew that Plaintiff was

responding in pain, and not resisting, and still he let Warden attack, bite and gnaw on Plaintiff for an unreasonable and excessive period of time. Defendant supervisors, including Sergeants and Sheriff ANDERSON, had access to objective evidence of the event (e.g., via bodycam) and was required to conduct a full excessive force and canine deployment assessment and report. Plaintiff is informed and believes that Defendants supervisors and Sheriff ANDERSON simply rubberstamped and ratified the excessive force and unnecessary canine deployment as per usual.

26. At all relevant times, Defendant YUBA SD maintained written Use of Force and Canine Policies governing proportional force, canine deployment, de-escalation, warnings, intervention duties, reporting obligations, supervisory review, and medical care. Its Use of Force Policy expressly required deputies to use only objectively reasonable force proportional to the seriousness of the suspected offense and the reasonably perceived level of resistance, taking into account the totality of the circumstances, including known injuries, ability to comply, and whether the subject posed an imminent threat.

27. YUBA SD's Use of Force Policy further required deputies to employ de-escalation tactics and alternative measures where feasible before escalating force.

28. YUBA SD's policies imposed an affirmative "Duty to Intercede," requiring deputies observing force clearly beyond what was necessary to intervene to prevent unconstitutional force whenever feasible.

29. YUBA SD's policies further required deputies to immediately report force believed to exceed what was reasonably necessary and required prompt medical care for persons injured or complaining of injury following force.

30. YUBA SD's Canine Policy restricted canine apprehension deployments to circumstances involving serious offenses, imminent threats, active resistance, or situations where concealed suspects posed a danger to deputies or the public. Mere flight, absent additional dangerous circumstances, shall not justify canine apprehension. The policy required deputies to consider the seriousness of the offense, the degree of resistance, the threat posed by the suspect, and the feasibility of lesser force alternatives before deploying a canine.

31. The Canine Policy further required handlers to provide a clearly audible warning

before deploying a canine whenever feasible and required handlers to promptly terminate canine force once a suspect no longer posed a threat.

32. Defendants PIANTA, HAMMOND, SPIERS, E. JONES, WILLIAMS, BUGARIN, BURDICK, PAREDES and the DOE Defendants acted contrary to YUBA SD's written policies and in deliberate indifference to Plaintiff s constitutional rights.

33. Plaintiff repeatedly informed Defendants that he suffered from a fractured arm, wrist, and hand before force was applied against him. Defendants were therefore aware Plaintiff suffered from serious bodily injuries as defined under YUBA SD policy, including bone fractures and impaired use of bodily members. Despite this knowledge, Defendant HAMMOND intentionally targeted Plaintiff's known injuries by wrenching, manipulating, and applying force to Plaintiff's fractured arm before violently slamming Plaintiff to the ground.

34. Immediately after Plaintiff was slammed to the ground and rendered vulnerable, Defendant PIANTA manually brought canine "Warden" by leash directly onto Plaintiff and physically engaged the canine against Plaintiff without first issuing any canine warning and without providing Plaintiff a reasonable opportunity to comply. Warden immediately began biting and mauling Plaintiff while Plaintiff was on the ground, injured, vulnerable, and not actively resisting. Plaintiff did not pose an imminent threat of death or serious bodily injury to deputies or the public at the time canine force was used against him. Despite Plaintiff's vulnerable position and inability to meaningfully resist, PIANTA permitted Warden to continue biting and mauling Plaintiff for approximately thirty seconds before finally issuing the verbal command "oust."

35. The prolonged canine mauling violated YUBA SD's written policies governing force proportionality, canine deployment limitations, warning requirements, de-escalation obligations, release requirements, intervention duties, and medical safety considerations.

36. The involved deputies additionally violated YUBA SD policy by failing to intercede and stop unconstitutional force despite having both the opportunity and affirmative duty to do so.

37. Despite YUBA SD's written safeguards regarding excessive force and canine deployments, Defendants knowingly disregarded the policies and instead HAMMOND targeted the Plaintiff's injuries, and PIANTA utilized canine "Warden" as a pain-compliance and punishment

tool against an injured and vulnerable suspect who was already subdued and under physical control.

38. Upon information and belief, YUBA SD maintained customs, practices, and patterns of tolerating excessive force by deputies and canines, failing to discipline deputies for unconstitutional excessive force as well as unreasonable canine deployments, inadequately training deputies and canine handlers and inadequately supervising canine handlers, and by ratifying unconstitutional use of force.

39. The disparity between YUBA SD's formal written policies and the conduct actually carried out against Plaintiff demonstrates a longstanding custom, practice, or pattern of tolerating noncompliance with constitutional limitations and departmental excessive force prohibitions and as to canine deployment requirements.

40. Upon information and belief, YUBA SD policymakers and supervisors, including Defendant ANDERSON routinely failed to meaningfully enforce excessive force policies and canine deployment restrictions, failed to discipline unconstitutional excessive force by deputies and by canines, failed to retrain deputies following excessive force events and/or improper canine deployments, and thereby encouraged deputies to disregard constitutional and policy limitations during arrests.

41. Upon information and belief, YUBA SD's customs and practices included tacit approval of using excessive force and police canines as pain-compliance instruments against vulnerable or non-resisting suspects despite written policies purporting to prohibit excessive and unreasonable force and to limit canine use to situations involving imminent threats, active resistance, or concealment dangers.

42. Upon information and belief, supervisors reviewed the incident, body camera footage, and canine deployment reports yet failed to meaningfully discipline, retrain, or correct the involved deputies despite the objectively unreasonable use of force targeting Plaintiff's injuries by HAMMOND and the unreasonable canine deployment by PIANTA and allowing Warden to attack and chew on Plaintiff for a prolonged bite leading to gaping lacerations and long-term damage, disfigurement and scarring.

////

**<u>FIRST CAUSE OF ACTION</u>**
**Unreasonable Seizure / Excessive Force**
**Violation of the 4th Amendment of the U.S. Constitution**
**Actionable under 42 U.S.C. §1983**
*(Against All Named Defendants, and Does 1-50)*

43. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 42, as though fully set forth herein.

44. Defendants intentionally used objectively unreasonable and excessive force against Plaintiff in violation of the Fourth Amendment. The aforementioned acts and/or omissions of the Defendants, as alleged herein, interfered with the exercise and enjoyment of Plaintiff's civil rights as guaranteed by the Fourth Amendment to the U.S. Constitution, which guarantees citizens the right "to be secure in their persons … against unreasonable seizures…"

45. Specifically, it was wholly unnecessary and unreasonable to use *any force* against the injured and defenseless Plaintiff as Plaintiff was attempting to comply, and the YUBA SD personnel could have easily detained / seized Plaintiff. Instead, Defendants knowingly targeted Plaintiff's fractured arm and wrist, slammed Plaintiff to the ground, manually engaged canine "Warden" against Plaintiff without warning, and allowed a prolonged canine mauling despite Plaintiff's attempts to comply and lack of meaningful resistance

46. Under the circumstances, the decision by HAMMOND to intentionally target Plaintiff's injury / disability with a forceful hold, to slam him to the ground when Plaintiff predictably jerked in pain, and to manipulate and contort Plaintiff's injured arm / hand behind his back when Plaintiff continued cried out in pain, clearly constitutes unreasonable and excessive force by HAMMOND, as well as SPIERS and E. JONES who directly assisted in the take down when they knew that Plaintiff was attempting to comply and that Plaintiff had a significant injury. The other named Defendant deputies were present and aware of the same facts, and failed to intervene despite clear policy by YUBA SD against use of excessive force, and an affirmative obligation for deputies to intercede and prevent such unlawful use of force.

47. PIANTA's use of a canine when Plaintiff was not resisting and was otherwise under control by other personnel was unwarranted and unjustified and clearly constitutes excessive force

against Plaintiff. The situation was exacerbated by Defendants' failure to prevent the canine from biting or to quickly stop the attack when it was clear that Plaintiff was lying defenseless and in pain. The officers' inaction while observing and allowing the canine to continue to bite and gnaw on Plaintiff while Plaintiff made no resistance (but rather writhed in pain) is appalling and despicable. Not only did the deployment violate express YUBA SD policy, but the Defendant deputies also failed to intercede and stop the excessive force resulting from unlawful canine deployment.

48. The involved deputies either directly participated in the excessive force (e.g., HAMMOND, E. JONES, SPIERS, PIANTA and DOE Defendants) and/or failed to intervene despite having a realistic opportunity to prevent further harm (e.g., PIANTA, HAMMOND, SPIERS, E. JONES, WILLIAMS, BUGARIN, BURDICK, PAREDES and DOE Defendants). These actions and inactions violate Plaintiffs rights and support liability against the Defendants under Section 1983, and they are direct violations of YUBA SD's express policies regarding use of excessive force and canine deployments. Defendant ANDERSON is responsible for said policies, and is responsible for Defendants' customs, practices and ratification of conduct that runs contrary to written policy and constitutional law, and Defendant ANDERSON is responsible for excessive force and unlawful canine deployment where, such as here, it arises from YUBA SD's failures to properly train on its policies, and where YUBA SD and individual Defendants evidence a deliberate indifference to its written policies and the laws regarding excessive force and canine use.

49. The named individual Defendants and DOE Defendants present violated both constitutional standards and YUBA SD's express "Duty to Intercede" policy by failing to intervene to stop clearly excessive force and prolonged canine biting despite having the opportunity and obligation to do so. Defendants' force was objectively unreasonable under the totality of the circumstances because Plaintiff was injured, vulnerable, effectively restrained, not actively resisting, and did not pose an imminent threat to deputies or the public.

50. Defendants ignored feasible alternatives and de-escalation measures required under YUBA SD policy before escalating force and deploying canine Warden.

51. As a direct and proximate result of the aforementioned acts and/or omissions by Defendants, Plaintiff suffered severe physical injuries, unreasonable interference with his personal

liberty, scars, disfigurement, medical expenses, pain and suffering, emotional distress and other injuries and damages to be proven at trial.

52. Defendants' conduct was malicious, oppressive, punitive, sadistic, and undertaken with deliberate indifference to Plaintiff's constitutional rights and bodily integrity. Consequently, Plaintiff is entitled to seek an award of punitive damages against any responsible individual Defendants.

Wherefore, Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION
**Deliberate Indifference to Serious Medical Needs**
**Actionable Under 42 U.S.C. § 1983**
*(Against All Named Defendants, and Does 1-50)*

53. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 52, as though fully set forth herein.

54. Based upon the factual basis presented within the original Complaint, Plaintiff herein alleges as a separate cause of action for deliberate indifferent to his serious medical needs. Plaintiff had objectively serious medical needs, including a fractured left arm and wrist, severe canine bite injuries, bleeding wounds, reinjured left clavicle with a bone protruding from his shoulder, and substantial pain.

55. Defendants knew of Plaintiff's serious medical needs and deliberately disregarded them by delaying, interfering with, and failing to provide timely and appropriate medical treatment. Defendants' actions and omissions caused unnecessary pain, prolonged suffering, worsening injury, and emotional distress. As alleged above, HAMMOND specifically targeted Plaintiff's existing injuries in an act of excessive force in order to provoke Plaintiff, and HAMMOND was assisted directly by E. JONES and SPIERS, while PIANTA, WILLIAMS, BUGARIN, BURDICK, PAREDES and other DOES Defendants did not intercede to prevent the initial excessive force. Instead, PIANTA immediately contributed to additional injuries by siccing his canine unit Warden onto the vulnerable and injured Plaintiff laying defenseless on the ground being manhandled by other Defendants. Again HAMMOND, SPIERS, E. JONES, WILLIAMS, BUGARIN, BURDICK, PAREDES and other DOE Defendants failed to intercede and prevent PIANTA and Warden from

excessive force injuries from the canine attack. These actions led to Plaintiff re-breaking of his left arm / hand / wrist, reinjury to his left clavicle, gaping lacerations and damage to his lower extremities.

56. Despite being the cause of serious injuries and requiring immediate medical attention, Defendants refused to provide Plaintiff with even basic medical necessities, including hydration, stitching as recommended by Fire Department personnel on site (and an unidentified Sergeant at the scene expressly rejected the recommendation for stitches and insisted that they only apply bandages to the open wounds), and Plaintiff was not allowed to ride in an ambulance to the hospital, but rather, was forced to ride in a patrol vehicle while handcuffed with a fractured left arm / wrist / hand and open wounds. Defendants joked about Plaintiff's claimed injuries and WILLIAMS falsely accused Plaintiff of malingering.

57. When Plaintiff finally arrived at the hospital, he was taken into emergency surgery for the fractures in his left upper extremity. However, the fractured remained displaced and required additional surgeries. Defendants, however, refused to present Plaintiff back to the hospital for surgery for over 9 months.

58. While in custody, DOE Defendants administered unknown medications which led to Plaintiff to suffer an overdose in a possible attempt to further injure or dispose of Plaintiff to prevent him from making the claims herein.

59. Defendants knew of Plaintiff's serious medical needs and deliberately disregarded them by delaying, interfering with, and failing to provide timely and appropriate medical treatment. Defendants' actions and omissions caused unnecessary pain, prolonged suffering, worsening injury, and emotional distress.

60. Defendants' conduct was malicious, oppressive, punitive, sadistic, and undertaken with deliberate indifference to Plaintiff's constitutional rights and bodily integrity. Consequently, Plaintiff is entitled to seek an award of punitive damages against any responsible individual Defendants.

Wherefore, Plaintiff prays for judgment as set forth below.

///

**<u>THIRD CAUSE OF ACTION</u>**
**Violation of the California Constitution Art. I §§ 1,7,13,15 and Cal. Civil Code §43**
**Actionable under Cal. Civil Code § 52.1(b) (Bane Act)**
*(Against All Defendants, and Does 1-50)*

61. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 60, as though fully set forth herein.

62. Defendants intentionally interfered with Plaintiff's constitutional rights through threats, intimidation, coercion, excessive force, prolonged canine biting, and deliberate infliction of pain. Defendants knowingly targeted Plaintiff's known injury and intentionally used force despite awareness Plaintiff was attempting to comply and was not posing a meaningful threat.

63. Specifically, it was wholly unnecessary and unreasonable to use *any force* against the injured and defenseless Plaintiff. Defendants at the scene could have easily detained / seized Plaintiff. Under the circumstances, the decision by HAMMOND to intentionally target Plaintiff's injury / disability with a forceful hold, to slam him to the ground when Plaintiff predictably jerked in pain, and to use a canine when Plaintiff was not resisting and was otherwise under control by other personnel was unwarranted and unjustified and clearly constitutes excessive force against Plaintiff. The situation was exacerbated by Defendants' failure to prevent the canine from biting or to quickly stop the attack when it was clear that Plaintiff was lying defenseless and in pain. The officers' inaction while observing and allowing the canine to continue to bite and gnaw on Plaintiff while Plaintiff made no resistance (but rather writhed in pain) is appalling and despicable.

64. Defendants' intentional violations of YUBA SD's force limitations, canine deployment restrictions, warning requirements, de-escalation requirements, and intervention obligations further demonstrate Defendants' specific intent to interfere with Plaintiff's constitutional rights through threats, intimidation, coercion, and excessive force. Defendants knowingly targeted Plaintiff's known injuries and intentionally prolonged canine force despite Plaintiff's obvious vulnerability and inability to resist. The coercion inherent in Defendants' excessive force, prolonged canine mauling, and intentional infliction of pain constituted violations of Civil Code §52.1.

65. These actions and inactions violate Plaintiffs rights and support liability against the Defendants under Section 1983, and they are direct violations of YUBA SD's express policies

regarding use of excessive force and canine deployments. Defendant ANDERSON is responsible for said policies, and is responsible for Defendants' customs, practices and ratification of conduct that runs contrary to written policy and constitutional law, and Defendant ANDERSON is responsible for excessive force and unlawful canine deployment, such as her, where it arises from YUBA SD's failures to properly train on its policies, and where YUBA SD and individual Defendants evidence a deliberate indifference to its written policies and the laws regarding excessive force and canine use.

66. As a direct and proximate result of the aforementioned acts and/or omissions by Defendants, Plaintiff suffered physical injuries, unreasonable interference with his personal liberty, scars, medical expenses, pain and suffering, emotional distress and other injuries and damages. Defendants acted maliciously, oppressively, and with reckless disregard for Plaintiff's rights, entitling Plaintiff to compensatory damages, civil penalties, attorney's fees, etc. Defendants' violations of Plaintiff's rights as guaranteed by Civil Code § 52.1 (Bane Act) entitles Plaintiff to compensatory and punitive damages, a $25,000 civil penalty, attorney's fees, and injunctive relief; all of which are provided for in Civil Code §§ 52.1(b) and 52, and are requested below. Plaintiff is entitled to an award of punitive damages pursuant to Civil Code § 52(b)(1) against all responsible individual Defendants.

Wherefore, Plaintiff prays for judgment as set forth below.

## <u>FOURTH CAUSE OF ACTION</u>
**Entity Liability / Unconstitutional Policies and Practices**
**Monell claim- Actionable under 42 U.S.C. §1983**
*(Against Defendants YUBA SD, Anderson, Does 20-50)*

67. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 66, as though fully set forth herein.

68. The constitutional violations suffered by Plaintiff were caused by customs, policies, practices, ratification, deliberate indifference, and failures to train, supervise, and discipline maintained by YUBA SD and its policymaker Sheriff ANDERSON.

69. YUBA SD maintained customs and practices tolerating excessive force and unconstitutional canine deployments despite formal written policies intended to limit such conduct.

YUBA SD failed to adequately supervise canine handlers, enforce canine deployment policies, review canine bite incidents, retrain deputies, and discipline unconstitutional conduct.

70. Although YUBA SD maintained facially constitutional written policies regarding force proportionality, canine warnings, intervention duties, de-escalation, reporting, and medical care, the unconstitutional conduct inflicted upon Plaintiff demonstrates a widespread custom, practice, or tolerance of violating those policies without meaningful accountability.

71. The disparity between YUBA SD's written policies against excessive force and the actual conduct of Defendants demonstrates deliberate indifference to constitutional rights and failure to meaningfully enforce policy compliance.

72. Upon information and belief, policymakers within YUBA SD were aware canine deployments created a substantial risk of severe injury and constitutional violations when handlers disregarded warning requirements, deployment limitations, release obligations, and constitutional force limitations.

73. The disparity between YUBA SD's written canine policies and the conduct inflicted upon Plaintiff demonstrates deliberate indifference to constitutional rights and a longstanding pattern of tolerating unconstitutional canine force and policy violations.

74. Upon information and belief, YUBA SD policymakers routinely failed to meaningfully investigate canine bite incidents, ignored unconstitutional deployments, ratified improper uses of canine force, and failed to discipline or retrain deputies who violated constitutional standards and departmental policy.

75. Upon information and belief, YUBA SD customs and practices included tacit approval of using police canines as pain-compliance instruments against vulnerable or non-resisting suspects despite written policies purporting to prohibit such conduct.

76. Defendants' customs, practices, ratification, failures to train, and deliberate indifference were moving forces behind the constitutional violations inflicted upon Plaintiff.

77. The unconstitutional conduct inflicted upon Plaintiff was foreseeable and directly caused by YUBA SD's longstanding failures to supervise, discipline, investigate, and correct unconstitutional canine force and excessive force practices.

78. Upon information and belief, YUBA SD routinely failed to investigate, discipline, retrain, or correct deputies who violated use-of-force and canine policies, thereby encouraging unconstitutional force practices through tacit approval and ratification. This is on full display in the subject bodycam video where an unidentified Sergeant simply responds "perfect" when PIANTA admits that he immediately manually deployed Warden onto the detained and defenseless Plaintiff allowing Warden to viciously attack Plaintiff's lower extremities for almost 30 seconds. PIANTA immediately ends his bodycam to conceal further discussion and evidence of the supervising Sergeant's rubberstamp "investigation."

79. Upon information and belief, YUBA SD maintained customs permitting deputies to deploy police canines as pain-compliance weapons against vulnerable or subdued individuals despite formal written policies purporting to prohibit such conduct.

80. Upon information and belief, supervisory personnel routinely ignored violations of departmental requirements concerning canine warnings, intervention duties, proportionality limitations, de-escalation requirements, reporting obligations, and medical-aid requirements.

81. YUBA SD's failure to enforce compliance with its own written policies constituted deliberate indifference to the constitutional rights of persons with whom deputies came into contact, including Plaintiff.

82. The aforementioned acts of the individually named Defendants in wrongfully using excessive and unjustified force in violation of Plaintiff's constitutional rights were also in violation of the written policies of Defendants YUBA SD and Sheriff ANDERSON. Unfortunately, Defendants acted consistent with YUBA SD's actual policies, customs and/or practices which run contrary to the law and said written policies of YUBA SD. Such policies, customs and/or practices include, but are not limited to, an ongoing pattern of deliberate indifference to the rights and privileges of citizens of the County of Yuba to be free of excessive force and unlawful canine attacks, as well as being free to receive appropriate and timely medical attention for his serious, unresolved injuries.

83. Defendants YUBA SD and ANDERSON, and each of them, tacitly encouraged,

ratified and/or approved of the unlawful use of force against Plaintiff, and knew or should have known that such conduct was unjustified and would result in violations of Plaintiff's constitutional rights. Consequently, Defendants YUBA SD and ANDERSON were a direct and proximate cause of the injuries suffered by Plaintiff, in that said Defendants tacitly encouraged, ratified and/or approved of the violation of Plaintiff's rights and/or failed to adequately train and supervise their deputies and/or employees to prevent the occurrence of the constitutional violations alleged above.

84. As a direct and proximate result of the aforementioned customs, policies and/or practices of said Defendants, Plaintiff suffered injuries and damages as alleged herein.

Wherefore, Plaintiff prays for judgment as set forth below.

**FIFTH CAUSE OF ACTION**
**Supervisory Liability**
**Actionable under 42 U.S.C. §1983**
*(Against Defendants YUBA SD, Anderson, Does 20-50)*

85. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 84, as though fully set forth herein.

86. YUBA SD and Sheriff ANDERSON maintained customs, practices, policies, and failures of supervision that permitted excessive force and unconstitutional canine deployments.

87. YUBA SD and Sheriff ANDERSON failed to adequately supervise, discipline, and train deputies regarding constitutional limitations on force and canine deployment.

88. YUBA SD and Sheriff ANDERSON and supervisory personnel were deliberately indifferent to the obvious risk that deputies and canine handlers would disregard constitutional and departmental limitations governing excessive force and canine force absent meaningful supervision, discipline, investigation, retraining, and enforcement of policy compliance.

89. YUBA SD and Sheriff ANDERSON ratified or acquiesced in unconstitutional conduct by failing to meaningfully discipline or correct the involved deputies following review of the incident.

90. These acts and omissions were a substantial factor in causing Plaintiff's injuries.

91. YUBA SD and Sheriff ANDERSON failed to ensure meaningful enforcement of YUBA SD's use-of-force and canine policies despite the obvious risk that deputies would violate

constitutional limitations absent adequate supervision, discipline, investigation, retraining, and accountability.

92. YUBA SD and Sheriff ANDERSON maintained customs and practices permitting deputies to disregard departmental policies governing canine warnings, proportionality of force, intervention duties, de-escalation requirements, reporting obligations, and prompt termination of force.

93. The failure to meaningfully enforce compliance with written departmental policies was a moving force behind the constitutional violations inflicted upon Plaintiff.

94. As a direct and proximate result of the aforementioned customs, policies and/or practices of said Defendants, Plaintiff suffered injuries and damages as alleged herein.

Wherefore, Plaintiff prays for judgment as set forth below.

## SIXTH CAUSE OF ACTION
**Battery**
**California State Law**
*(Against Defendants YUBA SD, Hammond, Pianta, Spiers; E. Jones, Does 1-50)*

95. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 94, as though fully set forth herein.

96. Defendants intentionally used harmful and offensive force against Plaintiff without legal justification.

97. Defendant HAMMOND intentionally targeted Plaintiff's fractured arm and wrist, slammed him to the ground; HAMMOND, E. JONES and SPIERS forcefully manipulated Plaintiff's left upper extremity to apply handcuffs on his injuries; PIANTA manually engaged canine "Warden" against Plaintiff without warning, and caused or permitted canine "Warden" to bite and gnaw on Plaintiff for an unreasonable period while Plaintiff was vulnerable, injured, and not resisting.

98. Defendants' conduct constituted harmful and offensive contact causing severe physical injury and emotional distress.

99. YUBA SD is vicariously liable pursuant to Government Code §815.2 for torts committed by its employees acting within the course and scope of employment.

Wherefore, Plaintiff prays for judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

1. For compensatory, general and special damages against each Defendant, jointly and severally, to the extent permitted by law, in the amount proven at trial;

2. For punitive and exemplary damages against each individual Defendant, as allowed by law;

3. Civil penalties under Civil Code § 52 et seq.;

4. For costs and reasonable attorney's fees pursuant to 42 U.S.C. section 1988, Civil Code § 52.1 and §52(b)(3) and as otherwise authorized by statute or law;

5. Prejudgment interest; and

6. For such other relief as the Court deems just and proper.

LAW OFFICE OF GREGORY M. GUTH

Dated: May 28, 2026

/s/ *Gregory M. Guth*
______________________________
GREGORY M. GUTH, Attorney for Plaintiff

## DEMAND FOR TRIAL BY JURY

Plaintiff JUSTIN GROOMS hereby demands trial by jury.

Dated: May 28, 2026

/s/ *Gregory M. Guth*
______________________________
GREGORY M. GUTH, Attorney for Plaintiff